### HASTORF v. MAYOR, ETC., OF CITY OF NEW YORK.

(District Court, S. D. New York. November 14, 1894.)

MOORING UNSAFE — GOING ADRIFT — ANCHOR ENTANGLED BY CHAIN — NEGLIGENCE—WINTER ICE.

Upon the facts, it being found that the libelant's scow, in charge of the defendant and moored to a stake boat, went adrift with the stake boat, because the anchor of the latter had become partly unserviceable from being entangled with the chain through failure to examine and straighten out the chain after the winter's ice: *Held*, negligence of the defendant, for which it was answerable to the plaintiff in damages.

This was a libel by Albert H. Hastorf against the mayor, etc., of the city of New York, for damages to libelant's scow.

Stewart & Macklin, for libelant.

William H. Clark, Corp. Counsel, and James M. Ward, Asst. Corp. Counsel, for mayor, etc.

BROWN, District Judge. On the night of the 20th or 21st of April, 1893, the permanent stake boat in Gravesend Bay used by the defendant as a place for tying up scows before they were taken to the dumping grounds at sea, drifted from her mooring during a northeast gale, carrying with her several boats attached to her, including the libelant's scow Arcadia, which in consequence was damaged by stranding on the Staten Island shore.

The evidence shows that the scow had been used for these purposes for several years; that she was provided with heavy anchors,

which had weathered many storms without drifting, when at least an equal number of boats had been attached. I have no doubt that the anchors were sufficient, and would not have dragged, had the anchors been in proper position, as the gale was not one of extreme severity, being certainly less severe than many which the scow must have passed through without drifting.

The only rational explanation, I think, is that the position of the anchors had not been properly examined and adjusted after the outflow of the ice of the preceding winter; that there had been such drifting of the scow caused by the ice as to bring the two arms of the anchor fastenings so much in line with the chain leading from the swivel to the scow, that upon the swinging of the scow with the daily changes of tide, the chain became entangled with the flukes of the anchors so as to diminish greatly their holding power. When the scow's anchors were examined after the scow had drifted a considerable distance, the chains were found thus entangled. This circumstance does not make it absolutely certain that the chains were thus fouled before the scow drifted, as there was more or less swinging of the scow at her anchorage after she had drifted, and before she was picked up and the anchors examined. But the description of the completeness of the tangle seems to point to a longer period during which the anchor chains were swinging about the flukes than the interval of a couple of days after she drifted.

The testimony shows that reasonable prudence required that a scow moored for such purposes, and in that manner, should have her anchors and their position carefully examined after each winter season's ice; and no such examination was made in the spring of 1893. There is also testimony by the witness who moored the scow that he observed that she had drifted some. Comment has been made by counsel upon the fact that this witness would not specify how much he considered she had moved; but in the absence of bearings by which anything definite could be stated, it would be too much to refuse any credence to the witness' testimony upon such grounds, in the absence of any accurate bearings by which any definite distance could be estimated. No other adequate cause of drifting is suggested, save the possibility that the storm at Gravesend Bay may have been much more violent than the records show it was at the office of the weather bureau in the Equitable Building, where it did not appear to exceed common gales. It is further suggested that if the anchors had been thus entangled, similar drifting should have been expected in two storms which occurred in the early part of the same month, which from the records of the New York weather bureau had an equal force of wind. But these considerations seem to me of little weight. The fouling of the chains would naturally increase with time, and their holding power be continually diminishing; and in the storms in the early part of April, not only was the fouling probably less, but there is no sufficient means of comparing the positions, number and weight of the boats on these different occasions.

In the absence of any other reasonable explanation I am con-

strained to find that the dragging arose from the neglect of the defendant to examine the anchors and see that they were in proper position after the preceding winter's ice, as the evidence showed to be necessary.

Decree for the libelant, with costs, and order of reference to compute the damages.